UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON AND MAINE CORPORATION and )
SPRINGFIELD TERMINAL RAILWAY )
COMPANY, )
)
        Plaintiffs, )
)                  MAGISTRATE JUDGE Alexander
v. )
)                  04 - 12069 RCL
TOWN OF CHELMSFORD, CHELMSFORD )
BOARD OF HEALTH, RICHARD J. DAY, )   Case No. _____
PETER DULCHINOS, ANNMARIE ROARK, )
EARNEST WU, M.D., MASSACHUSETTS )
DEPARTMENT OF ENVIRONMENTAL )        RECEIPT # _____
PROTECTION and )                     AMOUNT $ 150 –
ROBERT W. GOLLEDGE, JR., )           SUMMONS ISSUED ✗
)                                    LOCAL RULE 4.1 _____
)                                    WAIVER FORM _____
        Defendants. )                MCF ISSUED _____
)                                    BY DPTY. CLK. _____
                                     DATE 9-27-04

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Boston and Maine Corporation ("B&M") and Springfield Terminal Railway Company ("STR") (collectively "Plaintiffs") seek a declaratory judgment, injunctive relief preventing the Town of Chelmsford (the "Town"), the Chelmsford Board of Health (the "Board"), the individual members of the Board of Health, and Robert W. Golledge, Jr., Commissioner of the Massachusetts Department of Environmental Protection ("DEP") (collectively "Defendants") from enforcing 310 CMR 7.11(2) because it illegally regulates the Plaintiffs' railroad operations, and damages. For their Complaint, Plaintiffs state as follows:

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this judicial district and all defendants reside in the same State.

## Statement of Case and Parties

3. Plaintiff, B&M is a Delaware corporation with its principal place of business at Iron Horse Park, North Billerica, Massachusetts 01862. B&M provides interstate rail freight service and is subject to the jurisdiction of the United States Surface Transportation Board ("STB").

4. Plaintiff, STR is a Vermont corporation with its principal place of business at Iron Horse Park, North Billerica, Massachusetts 01862. STR provides interstate rail freight service and is subject to the jurisdiction of the STB.

5. Defendant, Town is a municipal corporation organized under the laws of the Commonwealth of Massachusetts.

6. Defendant, Board is an agency of the Town.

7. Upon information and belief, Defendants, Peter Dulchinos, Annmarie Roark, and Earnest Wu, M.D. are the members of the Board and Defendant Richard J. Day is Director of the Board's staff. Plaintiffs sue these defendants in their official capacity.

8. Defendant, DEP is an agency of the Commonwealth of Massachusetts and Defendant, Robert W. Golledge, Jr. is Commissioner of DEP. DEP has promulgated the

regulation here complained of, 310 CMR 7.11(2). Plaintiff sues Mr. Golledge in his official capacity.

9. This action arises under (A) the Commerce and Supremacy Clauses of the United States Constitution, (B) the Interstate Commerce Act, as amended by the ICC Termination Act of 1995 ("ICA") (49 U.S.C. §§ 701-727, 10101-19108), (C) the Federal Railway Safety Act ("FRSA") (49 U.S.C. §§ 20101 *et seq.*), (D) the Declaratory Judgment Act (28 U.S.C. § 2201), and (E) the Civil Rights Act of 1871 (42 U.S.C. § 1983).

10. Plaintiffs seek declaratory and injunctive relief preventing and restraining Defendants from unlawfully regulating, in contravention of the Commerce and Supremacy Clauses of the United States Constitution, the FRSA and the ICA, Plaintiffs' operation of their railroad, including the use and operation of their locomotives for railroad transportation. Plaintiffs also seek damages for the harm caused them by the actions of Defendants.

**Facts**

11. B&M owns the railroad right-of-way that runs through the Town (the "Line"). Pursuant to an agreement between B&M and STR, approved by the STB's predecessor, the Interstate Commerce Commission, STR is the operator on the Line. B&M, STR and their affiliates, collectively, are informally known as the "Guilford Rail System." "Guilford Rail System," however, is not a legal entity.

12. The Line is a part of the STR main freight line, which runs from Rotterdam Junction, New York to Mattawankeag, Maine. The main freight line is the primary source of rail transportation for the movement of freight in New England and is a part of the interstate rail network.

13. On or about August 27, 2004, the Board sent a letter (the "Letter") addressed to "Guilford Rail System," signed by defendant, Richard J. Day, alleging that "Guilford Rail System" is in violation of Section 7.11(2) of Title 310 of the Massachusetts Code of Regulations. Section 7.11(2) provides:

"Diesel Trains.

"(a) No person owning or operating a diesel powered locomotive shall cause, suffer, allow or permit said locomotive to be operated in a manner such as to cause or contribute to a condition of air pollution.

"(b) No person shall cause, suffer, allow or permit the unnecessary foreseeable idling of a diesel locomotive for a continuous period of time longer than 30 minutes ...

"(c) 310 CMR 7.11(2)(a) and 7.11(2)(b) are subject to the enforcement provisions specified in 310 CMR 7.52"

The Letter purported to order, pursuant to 310 CMR 7.52 and Section 142B of Chapter 111 of the Massachusetts General Laws, "Guilford Rail System" to cease and desist the idling of locomotives on the Line.

14. The portion of the Line that passes though the Town, specifically North Chelmsford, Massachusetts (the "Location"), supports system-wide rail traffic. For example, the Location is only a short distance from two major rail yards owned by B&M that are known as "Lowell Yard" and "Ayer Yard" and are located in Lowell and Ayer, Massachusetts, respectively. Each day at least four trains of approximately one-half mile to one mile in length travel through Lowell Yard. Further, Ayer Yard houses a large intermodal facility that is not only serviced by STR but also supports the rail traffic of an additional interstate rail carrier.

15. The Location is subject to extensive congestion due to the amount of rail traffic in the area. Operational considerations regarding the movement of rail traffic and the safety of

railroad employees require, at times, the parking of locomotives at the Location in order to relieve congestion, and to allow trains to move with dispatch when the conditions permit.

## COUNT I

### Preemption by the ICA and the Supremacy Clause

16. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 15 as if fully set forth here.

17. The ICA grants the STB exclusive jurisdiction over virtually all matters involving rail transportation.

18. The ICA expressly gives the STB exclusive jurisdiction over railroad transportation and operations:

> [T]he Board has jurisdiction over transportation by rail carrier that is …by railroad…
>
> The jurisdiction of the Board over … transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching or side tracks, or facilities … is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(a)(1)(A) and (b).

19. The ICA defines "railroad" to include the "road used by a rail carrier and owned by it or operated under an agreement; and … ground, used or necessary for transportation." 49 U.S.C. § 10102(6).

20. The ICA further defines the term "transportation" to include "a locomotive … or equipment of any kind related to the movement of passengers or property, or both, by rail … and services related to that movement, including receipt, delivery … storage, handling and

interchange of passengers and property ... " 49 U.S.C. § 10102(9).

21. The ICA expressly preempts the regulation of railroad transportation by local and state agencies and instrumentalities.

22. The Defendants' proposed enforcement of 310 CMR 7.11(2) will illegally regulate railroad operations in that Plaintiffs will be forced to re-route a significant portion of traffic away from the Town or significantly adjust railroad operations to prevent idling for more than thirty minutes, which will likely result in Plaintiffs' violation of federal law and regulations.

23. Under color of state law, the Defendants have issued an order to cease and desist the idling of locomotives in direct contravention of the ICA's grant of exclusive jurisdiction to the STB.

24. Defendants' threatened actions will deprive the Plaintiffs of their rights under ICA and the Supremacy Clause of the United States Constitution, causing Plaintiffs substantial and irreparable harm, including, *inter alia*, unduly burdening and hindering Plaintiffs' railroad activities in interstate commerce and preventing Plaintiffs' compliance with federal law.

## COUNT II

### Preemption by FRSA and the Supremacy Clause

25. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 24 as if fully set forth here.

26. The FRSA requires the Secretary of Transportation to promulgate a nationally uniform regulatory scheme in all areas of railroad safety.

27. The FRSA expressly provides that:

The Secretary of Transportation ...shall prescribe regulations and issue orders for every area of railroad safety...

> Laws, regulations, and orders related to railroad safety ... shall be nationally uniform to the extent practicable.

49 U.S.C. §§ 20103, 20106.

28. The FRSA expressly provides that the Secretary of Transportation shall prescribe regulations and issue orders for every area of railroad safety. The Secretary of Transportation has delegated this power to the Federal Railroad Administration ("FRA"). The FRA develops, administers and enforces railroad safety regulations.

29. The Letter threatens to regulate Plaintiffs' compliance with railroad safety regulations and the safe operation of railroad right-of-way. For example, each train and each car in the train is required to receive a "Class I" brake test at various "locations." *See* 49 C.F.R. § 232.205. These tests must be conducted prior to movement of the train. The engine must be idling during these tests because the locomotive(s) provide the air for the rest of the train. The tests almost invariably take longer than thirty minutes to conduct. Plaintiffs cannot comply with the FRA brake testing regulations without violating 310 CMR 7.11(2).

30. Defendants' actions deprive the Plaintiffs of their rights under FRSA and the Supremacy Clause of the United States Constitution, causing Plaintiffs substantial and irreparable harm, including, *inter alia*, hindering Plaintiffs' business activities in interstate commerce and preventing Plaintiffs' compliance with federal law.

## COUNT III

### Violation of Dormant Commerce Power

31. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 30 as if fully set forth here.

32. The Constitution grants Congress the power to regulate interstate commerce, implicitly limiting states' authority to regulate such commerce. U.S. CONST. art. 1, § 8, cl. 3.

33. The Line is a part of the STR main freight line and the interstate rail network.

34. Defendants have ordered the Plaintiffs to cease and desist the idling of locomotives. This restriction directly regulates the operation of locomotives used in rail transportation and therefore, regulates interstate commerce, discriminates against interstate commerce, and unduly burdens interstate commerce in excess of any putative local benefits.

35. Defendants' threatened actions will deprive the Plaintiffs of their rights under the Commerce and Supremacy Clause of the United States Constitution, causing Plaintiffs substantial and irreparable harm, including, *inter alia*, hindering Plaintiffs' business activities in interstate commerce.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court—

(1) enter judgment, pursuant to 28 U.S.C. § 2201, declaring Defendants' attempt to regulate the use or operation of locomotives used in railroad transportation preempted by the ICA, FRSA and the Supremacy Clause of the Constitution, and in violation of the Dormant Commerce Power;

(2) enter an order, pursuant to 28 U.S.C. § 1651 and Rule 65 of the Federal Rules of Civil Procedure, permanently enjoining the Town, the Board, any division or subdivision of the Town, and the Commonwealth of Massachusetts from regulating the use or operation of locomotives used in railroad transportation;

(3) award the Plaintiffs their damages due to Defendants' unlawful actions;

(4)  award the Plaintiffs their costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

(5)  grant such other relief as may be just and proper.

Respectfully Submitted,

*/s/*

Robert B. Culliford (BBO #638468)
Katherine E. Potter (BBO #651726)
Iron Horse Park
North Billerica MA 01862
Tel. 978-663-1029

Eric L. Hirschhorn
Winston & Strawn LLP
1400 L Street, N.W.
Washington DC 20005
Tel. 202-371-5706

*Counsel for Plaintiffs*
   *Boston and Maine Corporation*
   *Springfield Terminal Railway Co.*

September 23, 2004